# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

CESAR ZAMORAN BELTRAN,

    Petitioner,

v.

TRACY JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:16-cv-6

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Cesar Beltran, ("Beltran"), who is currently incarcerated at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response. (Doc. 7.) For the reasons which follow, I **RECOMMEND** the Court **DISMISS** Beltran's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Beltran *in forma pauperis* status on appeal.

## BACKGROUND

Beltran is serving a 70-month sentence based on his conviction obtained in the Southern District of California for conspiracy to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). (Doc. 7-1, p. 11.) He has a projected release date of December 15, 2016, via good conduct time release. (Id.) On July 23, 2014, the Bureau of Immigration and Customs Enforcement ("ICE"), formerly the Immigration and Naturalization Service ("INS"), issued a detainer against Beltran. (Id. at p. 22.) The contentions Beltran sets forth in his Petition are largely based on the existence of this detainer.

# DISCUSSION

In his Petition, Beltran contends he has been classified as an illegal, deportable alien and is confined at D. Ray James Correctional Facility unlawfully because he is a citizen of the United States of America by virtue of his father being a citizen of the United States. (Doc. 1, pp. 3–4.) Beltran states his unlawful classification prevents him from participation in many Bureau of Prisons' ("BOP") programs, including eligibility for placement in a halfway house. (Id. at p. 4.) Additionally, Beltran contends he qualifies for a "cancellation of removal suspension of [d]eportation[,]" but staff have prevented his attempts to pursue his rights. (Id. at p. 5.)

Respondent states Beltran failed to exhaust his administrative remedies before filing his Petition. Respondent asserts an immigration detainer is not "custody" for Section 2241 purposes. Moreover, Respondent contends this Court lacks jurisdiction over Beltran's removal claims because he failed to exhaust his available remedies and because this Court cannot enjoin his removal proceedings. (Doc. 7, p. 3.)

Respondent raises several reasons why Beltran's Petition should be dismissed, which the Court addresses in turn.[1]

---

[1] Respondent also asserts that Beltran does not have a liberty interest in his security classification and does not allege a viable constitutional claim. Whether Beltran's putative constitutional claims are viable at this time is of no moment, as Beltran cannot raise constitutional claims regarding the conditions of his confinement in this Section 2241 Petition. See, e.g., Farmer v. Brennan, 511 U.S. 825 (1994) ("In general, the distinction between claims which may be brought under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and those which must be brought as habeas petitions is reasonably well settled. Claims in which federal prisoners assert that they are being subjected to unconstitutional punishment not imposed as part of their sentence are Bivens actions, not habeas actions."). To the extent the Court has considered Beltran's arguments in this regard, these arguments are subject to dismissal based on Beltran's failure to exhaust his administrative remedies, as discussed in Section I of this Report.

**I.     Whether Beltran Exhausted his Administrative Remedies**

　　**A.     Legal Requirements for Exhaustion**

The Eleventh Circuit has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense, and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). Additionally, the Supreme Court recently "held that the PLRA's ["Prison Litigation Reform Act's"] text suggests no limits on an inmate's obligation to exhaust— irrespective of any 'special circumstances.' And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account." Ross v. Blake, ___ U.S. ___, 2016 WL 3128839, at *5 (June 6, 2016).

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the

3

administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[2]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

---

[2] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

### B. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies.[3] First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

---

[3] Although Turner involved exhaustion requirements within the context of a 42 U.S.C. § 1983 action, it appears the two-step process set forth in Turner would be no less applicable to a Section 2241 proceeding. See McCoy v. Glidewell, Civil Action No. 4:11-cv-1683-JFA-TER, 2012 WL 3716872, at *5 (D.S.C. June 18, 2012) (noting Section 2241's exhaustion requirements and Turner's application of exhaustion standards to a Section 2241 petition).

5

### C.     Analysis of Beltran's Efforts at Exhaustion

In his Petition, Beltran indicates that he attempted to pursue his administrative remedies. However, he contends that staff has not responded properly to a single cop-out or remedy. (Doc. 1, p. 6.) Thus, in an abundance of caution, the Court will proceed to the second <u>Turner</u> step and make specific factual findings pertinent to the exhaustion question.

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures. (Doc. 7, p. 4.) This involves an attempt at informal resolution, which, if unsuccessful, is followed by a formal complaint via a Step 1 administrative remedy form. (<u>Id.</u> at p. 5.) An inmate may appeal the Step 1 administrative remedy to the Warden via a Step 2 administrative remedy form. (<u>Id.</u>) If the inmate is not satisfied with the resolution of the formal complaint, the inmate may appeal to the BOP's Administrator of the Privatization Management Branch, so long as the appeal involves BOP-related matters.[4] (<u>Id.</u>) If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel. (<u>Id.</u>) If an inmate files an administrative remedy concerning a BOP-related matter, the administrative remedies will be recorded in the BOP's SENTRY computer database. (<u>Id.</u> at p. 6.)

The evidence before the Court reveals Beltran has not filed any administrative remedy requests for BOP-related matters since he has been incarcerated based on his federal sentence. (Doc. 7-1, pp. 8, 62.) The Court finds this evidence more credible than Beltran's unsupported and conclusory allegations regarding exhaustion. Thus, Beltran failed to file an administrative remedy as to his claims that his classification as an illegal, deportable alien has caused him to be

---

[4] Examples of BOP-related matters which must be appealed through the BOP are: sentence computations, reduction in sentences, removal or disallowance of good conduct time, participation in certain programs, and an inmate's eligibility for early release. <u>Pichardo v. Zenk</u>, CV511-69, 2011 WL 5102814, at *2 n.4 (S.D. Ga. Sept. 27, 2011), *adopted by* 2011 WL 5103758 (Oct. 26, 2011).

unable to participate in certain programs. As set forth in footnote 4 of this Report, Beltran's claims concern BOP-related matters which must be appealed through the above-described process, which Beltran failed to do. Additionally, based on Respondent's submissions, it appears that the BOP's administrative remedies are available to Beltran, despite any contentions he may raise to the contrary. Consequently, the Court should **DISMISS** Beltran's claims for failure to exhaust.

## II. Whether Beltran is "in Custody" Pursuant to the ICE Detainer for Section 2241 Purposes

According to Respondent, Beltran's ICE detainer does not constitute custody for Section 2241 purposes. Respondent states Beltran's assertions are premature because he is in BOP custody, and removal proceedings have yet to begin. (Doc. 7, p. 11.)

"Under certain circumstances, challenges to detainers may . . . be brought under § 2241."[5] Roberts v. INS, 372 F. App'x 921, 924 (11th Cir. 2010) (alteration in original) (internal citation omitted). The Eleventh Circuit Court of Appeals has held that the filing of a detainer, standing alone, does not cause a prisoner to come within the custody of the Department of Homeland Security ("DHS") or ICE. Oguejiofor v. Attorney Gen. of the United States, 277 F.3d 1305, 1308 n.2 (11th Cir. 2002); Orozco v. United States Immigration & Naturalization Serv., 911 F.2d 539, 541 (11th Cir. 1990). This position is in accord with several other Courts of Appeals. See e.g., Zolicoffer v. United States Dep't of Justice, 315 F.3d 538, 539 (5th Cir. 2003); Garcia v. Taylor, 40 F.3d 299, 303–04 (9th Cir. 1994); Santana v. Chandler, 961 F.2d 514, 516 (5th Cir. 1992); Prieto v. Gulch, 913 F.2d 1159, 1162 (6th Cir. 1990); Mohammed v.

---

[5] "A detainer serves to advise another law enforcement agency that the [Department of Homeland Security] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). "The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." Id.

Sullivan, 866 F.2d 258, 260 (8th Cir. 1989). "The underlying rationale of these courts is that a detainer, as distinguished from other [ICE] orders, does not put a 'hold' on" the individual. Ryan v. Dep't of Homeland Sec., No. 3:09cv399/LAC/MD, 2010 WL 1433166, at *1 (N.D. Fla. Mar. 8, 2010); accord Galaviz-Medina v. Wooten, 27 F.3d 487, 493 (10th Cir. 1994) (noting that the lodging of a detainer, without more, is insufficient to render the alien "in custody").

Generally, a detainer is viewed as "an informal process advising prison officials that a prisoner is wanted on other pending charges and requesting notification prior to the prisoner's release." Id. (internal citation omitted). "In the immigration context, a detainer usually serves only as a notice to prison authorities that . . . ICE is going to be making a decision about the deportability of the alien in the future." Id. (citing Campillo v. Sullivan, 853 F.2d 593, 595 (8th Cir. 1988)). "The reasoning follows that the detainer does not serve to establish conclusively either present or future restraints on the prisoner's liberty." Id. "Because there is no actual claim to the individual following the completion of his criminal sentence, there is no custody." Id.

The Court should conclude that Beltran is not "in custody" of ICE for purposes of Section 2241 simply by way of the detainer ICE lodged against him before the time he filed his Petition. The undersigned notes Beltran does not contend that ICE served him with an order to show cause or a final deportation order or that there was some other reason he should be considered to be in the custody of ICE. See Alanis-Bustamonte v. Reno, 201 F.3d 1303, 1309 (11th Cir. 2000) (a show cause order, in combination with a warrant on a detainer, are prerequisites to formal commencement of removal proceedings). Because Beltran is not "in custody" of ICE by virtue of the detainer, this Court lacks subject matter jurisdiction under 28 U.S.C. § 2241 to address his claim. Thus, the Court should **DISMISS** this portion of Beltran's Petition.

**III.     Whether this Court can Entertain Beltran's Citizenship Claims**

Beltran contends he is a citizen of the United States because his father is a citizen of the United States. (Doc. 1, pp. 3–4.) In response, Respondent asserts Beltran must first seek a declaration of citizenship "through the appropriate agency or he must be in removal proceedings." (Doc. 7, p. 11.) However, Respondent asserts Beltran fails to provide documentation indicating that he was denied any request for citizenship. Even if Beltran had provided this evidence, Respondent maintains this portion of Beltran's Petition should be dismissed because he failed to exhaust his administrative remedies and because Beltran is not in removal proceedings. (Id.)

"Where an official's authority to act depends upon the status of the person affected, in this case eligibility for citizenship, that status, when in dispute, may be determined by a declaratory judgment proceeding after the exhaustion of administrative remedies." McGrath v. Kristensen, 340 U.S. 162, 169 (1950) (cited in Roberts v. INS, 372 F. App'x 921, 925 (11th Cir. 2010)). In McGrath, the United States Supreme Court concluded that the petitioner could bring a 28 U.S.C. § 2201 declaratory judgment action to determine citizenship status because the Attorney General's refusal to suspend deportation was a final administrative decision.

However, in Roberts, the Court determined that the petitioner could not bring a declaratory judgment action because the petitioner's immigration proceedings had not yet begun. Specifically, even though DHS had denied Roberts' naturalization application, Roberts had not challenged that denial before an immigration officer. Additionally, even though DHS issued a detainer for Roberts, Roberts had not received a Notice to Appear commencing removal proceedings. As a result, the district court in Roberts lacked jurisdiction to entertain Roberts' nationality claim. Similarly, this Court lacks jurisdiction to hear Beltran's citizenship claim

because "it is clear on the face of [Beltran's] complaint that immigration proceedings [have] not yet begun[.]" Roberts, 372 F. App'x at 925.

To the extent Beltran seeks to bring a derivative citizenship claim, he cannot do so at this time. However, the Court is mindful that inmates can bring derivative citizenship claims under certain conditions. See Sundar v. INS, 328 F.3d 1320, 1323 (11th Cir. 2003). In the first instance, an inmate begins by filing an application for certificate of citizenship with DHS. 8 C.F.R. § 341.1. If this application is denied, the inmate may file an appeal with the Administrative Appeals Unit ("AAU"). 8 C.F.R. §§ 322.5(b) and 103.3(a). If the AAU denies the appeal, then the applicant may be able to file an action in district court seeking declaratory judgment on his derivative citizenship claim. 8 U.S.C. § 1503(a); Ortega v. Holder, 592 F.3d 738, 744 (7th Cir. 2010) (noting that an individual can establish nationality pursuant to Section 1503 once an administrative application for a certificate of citizenship has been denied); Nelson v. United States, 107 F. App'x 469, 470–71 (6th Cir. 2004) (stating that Section 1503(a) requires a final administrative denial before a declaratory judgment action may be instituted). In those instances in which "an application for a certificate of citizenship has been denied and the time for appeal has expired, [the United States Customs and Immigration Service] will reject a subsequent application submitted by the same individual and the applicant will be instructed to submit a motion to reopen or reconsider[.]" 8 C.F.R. § 341.5(e).

The second instance in which judicial review of a derivative citizenship claim is appropriate occurs "[w]here an individual is subject to removal proceedings, and a claim of derivative citizenship has been denied" as part of such proceedings. Henriquez v. Ashcroft, 269 F. Supp. 2d 106, 108 (E.D.N.Y. 2003). In this circumstance, review is properly sought "before the appropriate court of appeals, not a district court." Id. (citing 8 U.S.C. § 1252(b)(5)).

Moreover, regardless of whether a claim of derivative citizenship is made following an application for a certificate of citizenship or in conjunction with removal proceedings, all available administrative remedies must be exhausted before a federal court has subject matter jurisdiction to review the claim. 8 U.S.C. §§ 1503(a) & 1252(b)–(d); Sundar v. INS, 328 F.3d 1320, 1323–24 (11th Cir. 2003) (noting that the exhaustion requirement is jurisdictional and applies equally to habeas corpus proceedings).

Beltran has not shown that he exhausted the proper administrative remedies before filing this cause of action. In addition, Beltran has not shown that deportation proceedings against him have begun[6] or that his citizenship application has reached finality. In short, this Court is without jurisdiction to entertain Beltran's citizenship claims. Accordingly, the Court should also **DISMISS** this portion of Beltran's Petition, as well.

## IV. Leave to Appeal *In Forma Pauperis*

The Court should also deny Beltran leave to appeal *in forma pauperis*. Though Beltran has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691

---

[6] Respondent asserts under a separate section in his Response that this Court lacks jurisdiction to enjoin future removal proceedings. (Doc. 7, p. 13.) The Court need not address this argument separately because, as noted in the body of this Report, a court of appeals is the proper venue in which to seek review of any future deportation proceeding. See also 8 U.S.C. § 1252(a)(5) (a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter). However, the Court notes Beltran can bring a Section 2201 declaratory judgment action in a district court on a derivative citizenship claim after he exhausts his administrative remedies. 8 U.S.C. § 1503(a).

(M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Beltran's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** without prejudice Beltran's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Beltran leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be

served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Beltran and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 12th day of October, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA